# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ALABAMA
### SOUTHERN DIVISION

| | |
|---|---|
| **JOHN BUSH GORDON**      ) | |
|     **Petitioner,**      ) | |
|          ) | |
| **v.**      ) | |
|          ) | **CRIMINAL ACTION NO. 15-00055-WS-N** |
| **UNITED STATES OF AMERICA,** ) | |
|     **Respondent.**      ) | |

## REPORT AND RECOMMENDATIONS

John Bush Gordon ("Gordon" or "Petitioner"), a federal prisoner proceeding *pro se*, has filed a Motion to Vacate, Set Aside, or Correct Sentence under 28 U.S.C. § 2255 and supporting memorandum (Docs. 48-49).[1] The motion has been referred for appropriate action to the undersigned Magistrate Judge who, under S.D. Ala. GenLR 72(a)(2)(R), is authorized to require responses, issue orders to show cause and any other orders necessary to develop a complete record, and to prepare a report and recommendation to the District Judge as to appropriate disposition of these proceedings brought under 28 U.S.C. § 2255, in accordance with 28 U.S.C. § 636(b)(1)(B)-(C), Rule 10 of the Rules Governing Section 2255 Proceedings for the United States District Courts.  *See* S.D. Ala. GenLR 72(b); (10/25/2016 electronic reference).

After conducting preliminary review in accordance with Rule 4(b) of the Rules Governing Section 2255 Proceedings, the undersigned entered an order setting deadlines for the United States to respond to the motion, and for Gordon to reply. (Doc. 50). As the United States has timely filed its response (Doc. 53) and

---

[1] All "Doc." citations herein refer to the docket of the above-styled criminal action.

Gordon has timely filed his reply (Doc. 56), the § 2255 motion is now under submission.

Having reviewed the parties' submissions in accordance with Rule 8 of the Rules Governing Section 2255 Proceedings, the undersigned finds that an evidentiary hearing is not warranted and that Gordon's § 2255 motion (Doc. 47) is due to be **DENIED** and **DISMISSED with prejudice**. The undersigned further finds that Gordon is not entitled to a certificate of appealability or to proceed *in forma pauperis* on appeal.

## I.    Background

In June 2015, Gordon pled guilty to one count of possessing a firearm as a prohibited person (felon), and one count of possessing a firearm during a drug trafficking crime, in violation to 18 U.S.C. §§ 922(g) and 924(c), respectively. (Docs. 32, 25). On October 21, 2015, Gordon was sentenced to 130 months in the custody of the Bureau of Prisons, which consisted of 70 months for the § 922(g) conviction, and a consecutive 60 month sentence for the § 924(c) conviction. (Doc. 44). Gordon did not file a direct appeal. Gordon's § 2255 motion, which raises five claims of ineffective assistance of counsel, and one claim that his right to counsel was violated, was dated October 13, 2016, and docketed October 17, 2016. (Docs. 48-49). Accordingly, his motion is timely pursuant to 28 U.S.C. § 2255(f)(1).

## II.   Applicable Law

### A.   General Standards in § 2255 Proceedings

Title 28 U.S.C. § 2255 "permits a federal prisoner to bring a collateral challenge by moving the sentencing court to vacate, set aside, or correct the sentence." *Winthrop-Redin v. United States*, 767 F.3d 1210, 1215-16 (11th Cir. 2014). Specifically, § 2255 provides:

> A prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside or correct the sentence ... If the court finds that the judgment was rendered without jurisdiction, or that the sentence imposed was not authorized by law or otherwise open to collateral attack, or that there has been such a denial or infringement of the constitutional rights of the prisoner as to render the judgment vulnerable to collateral attack, the court shall vacate and set the judgment aside and shall discharge the prisoner or resentence him or grant a new trial or correct the sentence as may appear appropriate.

28 U.S.C. § 2255(a)-(b).

"Once the defendant's chance to appeal has been waived or exhausted," a court is "entitled to presume he stands fairly and finally convicted, especially when, as here, he already has had a fair opportunity to present his federal claims to a federal forum." *United States v. Frady*, 456 U.S. 152, 164 (1982). "[A] collateral challenge, such as a § 2255 motion, may not be a surrogate for a direct appeal." *Lynn v. United States*, 365 F.3d 1225, 1232 (11th Cir. 2004) (per curiam) (citing *Frady*, 456 U.S. at 165 (collecting cases)). "Because collateral review is not a substitute for a direct appeal, the general rules have developed that: (1) a defendant

must assert all available claims on direct appeal, and (2) relief under 28 U.S.C. § 2255 is reserved for transgressions of constitutional rights and for that narrow compass of other injury that could not have been raised in direct appeal and would, if condoned, result in a complete miscarriage of justice." *Id.* at 1232 (internal citations, quotations, and footnote omitted).

> Under the procedural default rule, a defendant generally must advance an available challenge to a criminal conviction or sentence on direct appeal or else the defendant is barred from presenting that claim in a § 2255 proceeding. *McCoy v. United States,* 266 F.3d 1245, 1258 (11th Cir. 2001); *Jones v. United States,* 153 F.3d 1305, 1307 (11th Cir. 1998); *Mills*[ *v. United States*], 36 F.3d [1052,] 1055[ (11th Cir. 1994)]; *Greene v. United States,* 880 F.2d 1299, 1305 (11th Cir. 1989). This rule generally applies to all claims, including constitutional claims. *See Reed v. Farley,* 512 U.S. 339, 354, 114 S. Ct. 2291, 2300, 129 L. Ed. 2d 277 (1994) ("Where the petitioner—whether a state or federal prisoner—failed properly to raise his claim on direct review, the writ is available only if the petitioner establishes cause for the waiver and shows actual prejudice resulting from the alleged violation." (internal quotation marks, punctuation, and citations omitted)); *see also Wainwright v. Sykes,* 433 U.S. 72, 84, 97 S. Ct. 2497, 2505, 53 L. Ed. 2d 594 (1977) (applying cause and prejudice standard to constitutional claims).
>
> A defendant can avoid a procedural bar only by establishing one of the two exceptions to the procedural default rule. Under the first exception, a defendant must show cause for not raising the claim of error on direct appeal *and* actual prejudice from the alleged error. *Bousley v. United States,* 523 U.S. 614, 622, 118 S. Ct. 1604, 1611, 140 L. Ed. 2d 828 (1998); *Mills,* 36 F.3d at 1055; *Cross v. United States,* 893 F.2d 1287, 1289 (11th Cir. 1990); *Greene,* 880 F.2d at 1305; *Martorana v. United States,* 873 F.2d 283, 284 (11th Cir. 1989); *Parks v. United States,* 832 F.2d 1244, 1246 (11th Cir. 1987). Under the second exception, a court may allow a defendant to proceed with a § 2255 motion despite his failure to show cause for procedural default if " 'a constitutional violation has probably resulted in the conviction of one who is actually innocent.' " *Mills,* 36 F.3d at 1055 (quoting *Murray v. Carrier,* 477 U.S. 478, 496, 106 S. Ct. 2639, 2649, 91 L. Ed. 2d 397 (1986)); *see also Bousley,* 523 U.S. at 622, 118 S. Ct. at 1611; *Jones,* 153 F.3d at 1307.

*Id.* at 1234-35 (footnote omitted).

> Once a petitioner files a § 2255 motion, "[u]nless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief, the court shall ... grant a prompt hearing thereon, determine the issues and make findings of fact and conclusions of law with respect thereto." [28 U.S.C.] § 2255(b). A petitioner is entitled to an evidentiary hearing if he "alleges facts that, if true, would entitle him to relief." *Aron*[ *v. United States*], 291 F.3d [708,] 715[ (11th Cir. 2002)] (quoting *Holmes v. United States,* 876 F.2d 1545, 1552 (11th Cir. 1989)). "[A] petitioner need only *allege*—not prove—reasonably specific, non-conclusory facts that, if true, would entitle him to relief." *Id.* at 715 n.6. However, a district court need not hold a hearing if the allegations are "patently frivolous," "based upon unsupported generalizations," or "affirmatively contradicted by the record." *Holmes,* 876 F.2d at 1553 (quoting *United States v. Guerra,* 588 F.2d 519, 520–21 (5th Cir. 1979)); *see, e.g., Lynn v. United States,* 365 F.3d 1225, 1239 (11th Cir. 2004) ("Because the ... affidavits submitted by Lynn amount to nothing more than mere conclusory allegations, the district court was not required to hold an evidentiary hearing on the issues and correctly denied Lynn's § 2255 motion.").

*Winthrop-Redin*, 767 F.3d at 1216 (footnote omitted). *Accord, e.g., Diveroli v. United States*, 803 F.3d 1258, 1263 (11th Cir. 2015).

## B.    Ineffective Assistance of Counsel

The Sixth Amendment gives criminal defendants the right to effective assistance of counsel. U.S. Const., amend. VI; *Strickland v. Washington*, 466 U.S. 668, 684–86 (1984). "To establish an ineffective assistance of counsel claim, a defendant must show that (1) 'counsel's representation fell below an objective standard of reasonableness' and (2) that such failure prejudiced him in that 'there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.' " *United States v. Pease*, 240 F.3d 938, 941 (11th Cir. 2001) (per curiam) (quoting *Strickland*, 466 U.S. at 687-88, 694). "

'Conclusory allegations of ineffective assistance are insufficient.' " *Wilson v. United States*, 962 F.2d 996, 998 (11th Cir. 1992) (per curiam) (quoting *United States v. Lawson*, 947 F.2d 849, 853 (7th Cir. 1991)).  Moreover, "[b]ecause both parts of the test must be satisfied in order to show a violation of the Sixth Amendment, the court need not address the performance prong if the defendant cannot meet the prejudice prong, or vice versa." *Holladay v. Haley*, 209 F.3d 1243, 1248 (11th Cir. 2000) (citation omitted).  *See also Osley v. United States*, 751 F.3d 1214, 1222 (11th Cir. 2014) ("A habeas petitioner claiming ineffective assistance of counsel must carry his burden on both *Strickland* prongs, and a court need not address both prongs if the defendant has made an insufficient showing on one."); *Johnson v. Alabama*, 256 F.3d 1156, 1176 (11th Cir. 2001) ("The petitioner bears the burden of proof on the 'performance' prong as well as the 'prejudice' prong of a *Strickland* claim, and both prongs must be proved to prevail.  The *Strickland* test is not easily met; as we have said, 'the cases in which habeas petitioners can properly prevail on the ground of ineffective assistance of counsel are few and far between.[]' " (quoting *Waters v. Thomas,* 46 F.3d 1506, 1511 (11th Cir. 1995) (en banc) (citation omitted))).

"The test for ineffectiveness is not whether counsel could have done more; perfection is not required." *Waters v. Thomas*, 46 F.3d 1506, 1518 (11th Cir. 1995) (en banc).  "A lawyer can almost always do something more in every case. But the Constitution requires a good deal less than maximum performance." *Atkins v. Singletary*, 965 F.2d 952, 960 (11th Cir. 1992).  *Accord, e.g.*, *Burt v. Titlow*, 134 S.

Ct. 10, 18 (2013) ("[T]he Sixth Amendment does not guarantee the right to perfect counsel; it promises only the right to effective assistance…").

> In evaluating the first, or "performance," prong of *Strickland,* "[j]udicial scrutiny of counsel's performance must be highly deferential." [*Strickland*, 466 U.S.] at 689, 104 S. Ct. at 2065. Because retrospective evaluation of a lawyer's performance can be difficult, "a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that ... the challenged action might be considered sound trial strategy." *Id.* (internal quotations omitted). A petitioner must identify specific acts or omissions that were not the result of reasonable professional judgment, and a court should deem these acts or omissions deficient only if they "were outside the wide range of professionally competent assistance." *Id.* at 690, 104 S. Ct. at 2066. Simply put, the deference afforded an attorney's decision is great and the bar for proving a Sixth Amendment violation is high. In light of the "strong presumption in favor of competence," we have held that in order to prove deficient performance, "a petitioner must establish that no competent counsel would have taken the action that his counsel did take." *Chandler v. United States,* 218 F.3d 1305, 1315 (11th Cir. 2000) (en banc).
>
> Under the second, or "prejudice," prong of *Strickland*, a petitioner must "affirmatively prove prejudice" by showing that counsel's errors "actually had an adverse effect on the defense." 466 U.S. at 693, 104 S. Ct. at 2067. This requires a showing of more than "some conceivable effect on the outcome of the proceeding." *Id.* Instead, the petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694, 104 S. Ct. at 2068. Although this standard is difficult to meet, it is significant that a petitioner must show only a reasonable probability that the outcome would have been different; he "need not show that counsel's deficient conduct more likely than not altered the outcome in the case." *Id.* at 693, 104 S. Ct. at 2068. When evaluating this probability, "a court hearing an ineffectiveness claim must consider the totality of the evidence before the judge or jury." *Id.* at 695, 104 S. Ct. at 2069.

*Brownlee v. Haley*, 306 F.3d 1043, 1059-60 (11th Cir. 2002).

"[F]ailure to raise an ineffective-assistance-of-counsel claim on direct appeal does not bar the claim from being brought in a later, appropriate proceeding under § 2255." *Massaro v. United States*, 538 U.S. 500, 509 (2003). Indeed, "in most cases a motion brought under § 2255 is preferable to direct appeal for deciding claims of ineffective assistance." *Id.* at 504. *See also United States v. Curbelo*, 726 F.3d 1260, 1267 (11th Cir. 2013) ("An ineffective assistance claim should usually be raised in a motion under 28 U.S.C. § 2255." (citing *United States v. Patterson*, 595 F.3d 1324, 1328 (11th Cir. 2010))), *cert. denied*, 134 S. Ct. 962 (2014).

## III.    Analysis

Gordon raises five claims of ineffective assistance of counsel, and one claim that his right to counsel was violated. (Doc. 48). Gordon did not file a direct appeal of his convictions. Ordinarily, if an available substantive claim is not advanced on direct appeal, it is deemed procedurally barred in a § 2255 proceeding. *See Mills v. United States,* 36 F.3d 1052, 1055–56 (11th Cir.1994); *Greene v. United States,* 880 F.2d 1299, 1305 (11th Cir.1989). However, a claim that would normally be procedurally barred due to the failure to raise it on appeal may be presented in a § 2255 motion when couched as a claim of ineffective assistance of counsel. *See Massaro v. United States,* 538 U.S. 500, 504 (2003). Moreover, ineffective assistance of counsel may constitute "cause" excusing a procedural default, *see Greene,* 880 F.2d at 1305, but only if the claim of ineffective assistance is meritorious. *Id.* This involves a determination of the merits of the underlying substantive claim. *See United States v. Nyhuis,* 211 F.3d 1340, 1344 (11th Cir.2000) (to determine whether

8

a claim of ineffective assistance of counsel has merit, court must determine whether claims counsel failed to raise were meritorious).

### 1.    Claim Related to Counsel's Advice Regarding Potential Sentence

In his first claim, Gordon contends that his guilty plea was not knowing or voluntary because it was "coerced by the misleading advice of counsel where counsel advised him that if he continued to contest the [§] 924(c) count by having a jury trial and lost, he would get a life sentence." (Doc. 48 at 3). The Superseding Indictment charged Gordon with six counts. Counts One and Six alleged violations of 18 U.S.C. § 922(g)(1)(possession of a firearm by a prohibited person), Counts Two, Three, and Four alleged violations of 21 U.S.C. § 841(a)(possession with intent to distribute a controlled substance), and Count Five alleged a violation of 18 U.S.C. § 924(c). Counts One and Six carried a penalty of up to 10 years with a statutory mandatory minimum sentence of 15 years to life subject to the provisions of 18 U.S.C. § 924(e). Counts Two, Three, and Four each carried a potential term of imprisonment of up to 20 years. Count Five requires a five year mandatory sentence that must be run consecutive to any other sentence.

Gordon pled guilty to Counts One and Five. At the plea hearing the Court advised him as follows:

> THE COURT: For Mr. Gordon, if convicted of Count 1, you could receive a term of imprisonment up to ten years, a fine not to exceed $250,000, a supervised release term up to three years, a mandatory special assessment of $100, and any restitution that may be ordered by the Court.

> For Count 5 of the superseding indictment, if convicted, you could receive a term of imprisonment of no less than five years consecutive to any sentence in Count 1, a fine not to exceed $250,000, a supervised release term up to three years, a mandatory special assessment of $100, and any restitution that may be ordered by the Court. Do you understand that?
>
> DEFENDANT GORDON: Yes, sir.

(Doc. 51 at 8). "A guilty plea is open to attack on the ground that counsel did not provide the defendant with reasonably competent advice." *Stano v. Duggar,* 921 F.2d at 1125, 1149 (11th Cir. 1991) (quotation marks omitted). However, any error on the part of counsel in advising him as to the possible punishment did not prejudice Gordon. During Gordon's guilty plea colloquy, the Court expressly advised him that he potentially faced a statutory maximum of 10 years in prison on the § 922(g)(1) charge and a minimum 5 year consecutive term on the § 924(c) charge. The Court also advised him that the sentencing guidelines are only advisory and the Court was not required to follow them. Gordon indicated that he understood both of these points. (Doc. 51 at 9-11). *See United States v. Bui,* 769 F.3d 831, 835 (3d Cir.2014) (" '[A]n erroneous sentencing prediction by counsel is not ineffective assistance of counsel where ... an adequate plea hearing was conducted.' " (quoting *United States v. Shedrick,* 493 F.3d 292, 299 (3d Cir.2007)) (alteration added)); *United States v. Tuyen Quang Pham,* 587 F. App'x 6, 11 (3d Cir.2014) (unpublished) (" '[W]e have long held that an erroneous sentencing prediction by counsel is not ineffective assistance of counsel where, as here, an adequate plea hearing was conducted.' *United States v. Shedrick,* 493 F.3d 292, 299 (3d Cir.2007). The written plea agreement stated that [the defendant] faced a mandatory minimum penalty of

ten years' imprisonment and a maximum penalty of life imprisonment for each count to which he pled guilty and that no one had made any promises to him to get him to enter a guilty plea. Moreover, the District Court conducted an extensive and thorough plea colloquy reiterating [the defendant] sentencing exposure and ensuring that [the defendant] was not pleading guilty because anyone had made any promises outside the agreement. The District Court also explained that it could disregard recommendations by counsel at sentencing, but [the defendant] would still be bound by his guilty plea. [The defendant] told the District Court that he understood all this information. Accordingly, any misperceptions [the defendant] had about his sentence when he decided to plead guilty should have been eliminated by the written plea agreement and the plea colloquy. Thus, the District Court properly denied [the defendant] claim because he failed to show that, but for his counsel's erroneous prediction about the safety valve provision, he would have pled not guilty and proceeded to trial.

Because Gordon has failed to show that he was prejudiced by counsel's alleged error in advising him as to possible sentencing exposure, the undersigned **RECOMMENDS** that Claim One be **DENIED.**

### 2.    Counsel's Performance Prior to Entry of Plea

In Claims Two, Four, Five, and Six, Gordon alleges that counsel was ineffective by permitting Gordon to plead guilty when there was no evidence of his guilt and that she failed to file a motion to suppress statements made to agents

which Gordon contends were made in violation of his Sixth Amendment right to counsel.

When Gordon plead guilty, he did so by way of a written plea agreement which included a factual resume. According to the factual resume, pursuant to a state issued search warrant:

> After making forced entry through the front door, officers detained "A.T." (Gordon's girlfriend) in the back bedroom along with her 3-year old son. GORDON fled the scene but was soon apprehended in the front yard of a nearby house. GORDON later admitted post-Miranda that he ran out the back door when he heard police making entry and attempted to get away.
>
> During the search, officers found a total of nine (9) firearms throughout the house. In the bedroom where "A.T." and the young child were sleeping, officers located a .22 AR-15 rifle, a .22 machine style pistol, a 9mm machine pistol with a dummy suppressor on it, a 12 gauge shotgun with a 15" barrel, a 20 gauge shotgun, a 7.62 SKS assault rifle, and a .22 revolver. Sitting on the short night stand right beside the bed where the 3-year-old was asleep was a .44 magnum revolver. There was also a Daewoo .40 caliber pistol in this bedroom, which was later determined to have been stolen during a burglary in Escambia County, Florida. Officers also found $1,010 in U.S. Currency in a small legal pad book on the same night stand with the .44 magnum. All firearms located in this bedroom were fully loaded with a round in the chamber. Another weapon, a .40 caliber handgun, was seized from GORDON'S truck - in the center console along with two hand-rolled marijuana cigarettes. A total of ten (1 0) loaded firearms were seized from GORDON, and described as follows:
>
> 1. a Smith and Wesson, model SW40VE, .40 caliber pistol, SN: RAX8930;
>
> 2. a Charter Arms, model: Police Bulldog, .44 caliber revolver, SN: 243008;
>
> 3. an Intratec, model Sport 22, .22 caliber pistol, SN: K008924;
>
> 4. a MasterPiece Arms, model MP A930, 9mm pistol, SN: B8546;

5. a Daewoo, model DH40, .40 caliber pistol, SN: DA200608;

6. a ROHM GmbH, model RG10, .22 caliber revolver, SN: 901895;

7. a Western Field, model M175B, 20 gauge shotgun, SN: 703764;

8. a Mossburg, model 715T, .22 caliber rifle, SN: ELL3591814;

9. a Norinco, model MAK 90, .7.62 x 39 caliber semiautomatic rifle, SN: 9435485;

10. a Companhia Brasileira de Cartuchos, model SB, 12 gauge shotgun SN: 655040.

Officers also located and seized the following illegal drugs, which were sent to the DEA laboratory for testing and analysis:

Ex. 1 - 2278 grams of marijuana;

Ex. 2 - 8 dosage units- confirmed to be 3.0 grams of MDMA;

Ex. 3 - 1916 dosage units on LSD blotter paper - confirmed to be 23.7 grams of N-(2-Methoxybenzyl)-4-iodo-2,5-dimethoxyphenethylamine (251-NBOMe) on 1916 units on perforated small squares. This is a hallucinogen drug which became a Schedule I controlled substance on November 15, 2013;

Ex. 5 - 0.16 grams of93.3% pure d-methamphetamine hydrochloride;

Ex. 6 - 43.6 grams of 4-Bromomethcathinone (4-BMC) Hydrochloride (a controlled substance analogue of methcathinone;

Ex. 7 - 2.1 grams of 4-Bromomethcathinone (4-BMC) Hydrochloride (a controlled substance analogue of methcathinone;

Ex. 8 - 1 package labeled "MATRIX" - confirmed to be 14.5 grams of a mixture and substance containing AB-FUBINACA;

Ex. 9- 1 package labeled "ICE DRAGON"-confirmed to be 3.4 grams of a mixture and substance containing AB-FUBINACA;

Ex. 10-7 packages labeled "BLUE 7H" - confirmed to be 27.2 grams of a mixture and substance containing AB-FUBINACA;

Ex. 11 - 3 packages labeled "GEEKED" - confirmed to be 11.5 grams of a mixture and substance containing AB-FUBINACA.

Ex. 12 - 5 packages labeled "BOMB MARLEY" - confirmed to be 18.9 grams of a mixture and substance containing AB-FUBINACA.

Ex. 14 - 41 blue dosage units- confirmed to be 13.2 grams of 5.0% methamphetamine.

After being advised of his *Miranda* rights, GORDON admitted that he had knowledge of all of the illegal drugs and firearms in the residence. He admitted that he possessed the guns because he had been robbed several times and wanted to protect himself and his drug operation.

(Doc. 32 at 12-14). Though Gordon has labeled his claims as claims of ineffective assistance of counsel, in essence, Gordon is arguing that the facts recited in the factual resume, which the district court concluded were sufficient to sustain his guilty plea, are inaccurate. At the plea hearing, however, Gordon affirmed under oath that the factual resume was true and correct and that the government could have proven the facts contained therein at trial, and that affirmation carries a strong presumption of veracity that cannot be overcome by Gordon's present self-serving statements to the contrary.[2] *Lynch v. United States*, 2017 WL 4570524, at *11 (11th Cir. June 26, 2017). In the Eleventh Circuit, there is "a 'strong

---

[2] THE COURT: Now, I've been furnished a written plea agreement in each of your cases. This plea agreement appears to have your signature in a couple of places, at the end of the plea agreement and also at the end of the factual resume. Did you, in fact, sign the document, Mr. Gordon?

DEFENDANT GORDON: Yes, sir.
...

THE COURT: By signing this document, you're acknowledging that you have received a copy of it, that you've had an opportunity to read it and review it with your attorney, that you fully understand the terms and conditions of the plea agreement and the factual resume, and that you agree with it. Is that true, Mr. Gordon?

DEFENDANT GORDON: Yes, sir.

(Doc. 51 at 6-7).

presumption' that statements made by the defendant during his plea colloquy are true." *United States v. Cardenas,* 230 F. App'x 933, 935 (11th Cir.2007) (citing *United States v. Medlock,* 12 F.3d 185, 187 (11th Cir.1994)). "[T]herefore, 'when a defendant makes statements under oath at a plea colloquy, he bears a heavy burden to show his statements were false.'" *Id.* (quoting *United States v. Rogers,* 848 F.2d 166, 168 (11th Cir.1988)). Gordon has made no attempt to explain how or why his guilty plea testimony should now be deemed false. Thus, because the record affirmatively contradicts these claims, the undersigned **RECOMMENDS** that Claims Two, Four, Five, and Six be **DENIED.**

### 3.    Counsel's Performance at Sentencing

Gordon claims that counsel was ineffective at sentencing because she failed to challenge the application of one criminal history point for a March 2015 state drug conviction. (Doc. 39 at 9, ¶ 40).

Gordon committed the federal offenses at issue in December 2014. He maintains that no criminal history points should have been assessed because this state conviction occurred in January 2015, after he committed his federal offenses. However, because he was sentenced for the state drug offense in March 2015, which was before he was sentenced for his federal gun offenses in October 2015, the criminal history point was properly applied. *See* U.S.S.G. § 4A1.1 (outlining the number of criminal history points to be assigned for "prior sentences"); U.S.S.G. § 4A1.2 Cmt. App. n. 1 ("'Prior sentence' means a sentence imposed *prior to sentencing on the instant offense*, other than a sentence for conduct that is part of

the instant offense. . . . *A sentence imposed after the defendant's commencement of the instant offense, but prior to sentence on the instant offense, is a prior sentence* if it was for conduct other than conduct that was part of the instant offense.") (emphasis added). Thus, Gordon's attorney did not perform ineffectively in choosing not to raise this meritless sentencing objection. *Freeman v. Atty. Gen., Florida*, 536 F.3d 1225, 1234 (11th Cir. 2008) ("A lawyer cannot be deficient for failing to raise a meritless claim."). Accordingly, the undersigned **RECOMMENDS** that Claim Three be **DENIED**.

### 4. *Johnson v. United States* Claim

In his reply brief, Gordon makes reference to preserving a claim under *Johnson v. United States*, 135 S. Ct. 2251 (2015). In *Johnson*, the United States Supreme Court held that the residual clause of the Armed Career Criminal Act ("ACCA") (18 U.S.C. § 924(e)) is unconstitutionally vague because it creates uncertainty about how to evaluate the risks posed by a crime and how much risk it takes to qualify as a violent felony. 135 S. Ct. 2251, 2557-58, 2563 (2015).[3]

Importantly, Gordon was not sentenced pursuant to the ACCA. He was sentenced pursuant to § 924 (c)(1), which provides for a mandatory consecutive sentence for any defendant who uses a firearm during a crime of violence or a drug

---

[3] The ACCA defines a violent felony as any crime punishable by imprisonment for a term exceeding one year that: (1) has as an element the use, attempted use, or threatened use of physical force against the person of another; (2) is burglary, arson, or extortion, or involves use of explosives; or (3) otherwise involves conduct that presents a serious potential risk of physical injury to another. 18 U.S.C. § 924(e)(2)(B); *Mays v. United States*, 817 F.3d 728, 730-31 (11th Cir. 2016). These three "clauses" are known as the "elements clause," the "enumerated clause," and the "residual clause," respectively. *Mays* at 731.

trafficking crime. 18 U.S.C. § 924(c)(1).[4] Gordon's § 924(c) conviction rested upon his drug trafficking crimes charge in Counts Two, Three, and Four of the Superseding Indictment. (Doc. 21). Thus, any potential applicability of *Johnson* (even assuming this challenge was timely raised) is meritless as the definition of a crime of violence was not implicated. *See e.g. United States v. Perez-Monge,* 2017 WL 1370772, *2 (N.D. Fla. Feb. 24, 2017) ("Petitioner's discussion of the statute in his memorandum does not acknowledge that his conviction on Count Two rested not on a crime of violence but rather on the drug trafficking crime charged in Count One of the indictment.... As such, even assuming the holding in *Johnson* is properly extended to § 924(c)(1)(A), *Johnson* has no application to Petitioner's case, and he is not entitled to relief."), *report and recommendation adopted,* 2017 WL 1393703 (N.D. Fla. Apr. 13, 2017); *Jimenez-Najera v. United States,* 2017 WL 393729, *2 (N.D. Ga. Jan. 30, 2017) ("Because Movant was charged and convicted of carrying a firearm during and in relation to a drug trafficking crime, not during and in relation to a crime of violence, the Magistrate Judge found that Section 924(c)'s definition of 'crime of violence' 'played no role in this case.' ... Even if the 'crime of violence' clause in Section 924(c) is unconstitutional, it did not affect Movant's sentence."); and *Johnson v. United States,* 2016 WL 4179995, *1 (S.D. Ala. Aug. 5, 2016) ("Petitioner was convicted for possessing a firearm during and in furtherance of a 'drug trafficking crime,' not a 'crime of violence.' *Johnson* has no impact on the

---

[4] "[N]o term of imprisonment imposed on a person under this subsection shall run concurrently with any other term of imprisonment imposed on the person, including any term of imprisonment imposed for the crime of violence or drug trafficking crime during which the firearm was used, carried, or possessed." 18 U.S.C. § 924(c)(1)(D)(ii).

definition of a 'drug trafficking crime.' Thus, even if *Johnson* [was] extended to the clause contained in § 924(c)(3)(B), this clause was not implicated in Petitioner's case." (internal footnote omitted)). Because this Court did not sentence Gordon under the residual clause of the ACCA and because his conviction under § 924(c)(1)(A) did not in any way involve a "crime of violence" and he was not sentenced under the residual clause of § 924(c),[7] the undersigned **RECOMMENDS** that this Court find that the holding in *Johnson* does not apply in Petitioner's case and alternatively deny his § 924(c) claim on the merits.[5]

## IV.    Certificate of Appealabilty

Pursuant to Rule 11(a) of the Rules Governing § 2255 Proceedings, the undersigned recommends that a certificate of appealability in this case be denied. 18 U.S.C. foll. § 2255, Rule 11(a) ("The district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant."). The habeas corpus statute makes clear that an applicant is entitled to appeal a district court's denial of his habeas corpus petition only where a circuit justice or judge issues a certificate of appealability. 28 U.S.C. § 2253(c)(1). A certificate of appealability may only issue where "the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2243(c)(2).

When a habeas petition is dismissed on procedural grounds, such as in the instant case, without reaching the merits of any underlying constitutional claim, "a

---

[5] Gordon's conviction under § 924(c)(1)(A), which rested on a drug trafficking crime, would still be valid even if this Court was to find that *Johnson* renders the "crime of violence" definition in § 924(c)(3)(B) unconstitutional.

COA should issue [only] when the prisoner shows...that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000); *Miller-EL v. Cockrell*, 537 U.S. 322, 336 (2003)("Under the controlling standard, a petitioner must 'show that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have resolved in a different manner or that the issues presented were 'adequate to deserve encouragement to proceed further.' ").

Under the facts of this case, a reasonable jurist could not conclude either that this Court is in error in dismissing the instant petition or that Petitioner should be allowed to proceed further.  *Slack*, 529 U.S. at 484 ("Where a plain procedural bar is present and the district court is correct to invoke it to dispose of the case, a reasonable jurist could not conclude either that the district court erred in dismissing the petition or that the petitioner should be allowed to proceed further."). Accordingly, the undersigned recommends that the court conclude that no reasonable jurist could find it debatable whether the Petitioner's petition should be dismissed; thus, he is not entitled to a certificate of appealability.

## V.    Appeal *In Forma Pauperis*

"An appeal may not be taken in forma pauperis if the trial court certifies in writing that it is not taken in good faith."  28 U.S.C.A. § 1915(a)(3).  A district court's finding "that an appeal would not be in good faith because no certificate of

appealability had been issued . . . is not enough to explain why the appeal on the merits would not be in good faith, because the standard governing the issuance of a certificate of appealability is not the same as the standard for determining whether an appeal is in good faith. It is more demanding . . . [T]o determine that an appeal is in good faith, a court need only find that a reasonable person could suppose that the appeal has some merit." *Walker v. O'Brien*, 216 F.3d 626, 631-32 (7th Cir. 2000). *See also Weaver v. Patterson*, Civ. A. No. 11-00152-WS-N, 2012 WL 2568218, at *7 (S.D. Ala. June 19, 2012) (Nelson, M.J.), *report and recommendation adopted*, Civ. A. No. 11-00152-WS-N, 2012 WL 2568093 (S.D. Ala. July 3, 2012) (Steele, C.J.) ("An appeal may not be taken *in forma pauperis* if the trial court certifies in writing that the appeal is not taken in good faith. 28 U.S.C. § 1915(a)(3); *see* Fed. R. App. P. 24(a)(3)(A); *Lee v. Clinton*, 209 F.3d 1025, 1026 (7th Cir. 2000) (concluding that 'good faith' is 'an objective concept' and that 'not taken in good faith' is 'a synonym for frivolous'); *DeSantis v. United Techs, Corp.*, 15 F. Supp. 2d 1285, 1288–89 (M.D. Fla. 1998) (stating that good faith 'must be judged by an objective, not a subjective, standard' and that an appellant 'demonstrates good faith when he seeks appellate review of any issue that is not frivolous'). An appeal filed *in forma pauperis* is frivolous if 'it appears that the Plaintiff has little to no chance of success,' meaning that the 'factual allegations are clearly baseless or that the legal theories are indisputably meritless.' *Carroll v. Gross*, 984 F.2d 392, 393 (11th Cir. 1993)."). *But see, e.g., United States v. McCray*, No. 4:07CR20-RH, 2012 WL 1155471, at *2 (N.D. Fla. Apr. 5, 2012) ("Because the defendant has not obtained—and is not entitled

20

to—a certificate of appealability, any appeal by the defendant will not be taken in good faith. I certify under Federal Rule of Appellate Procedure 24(a) that any appeal will not be taken in good faith and that the defendant is not otherwise entitled to proceed *in forma pauperis* on appeal.").

Considering the foregoing analysis, the undersigned recommends the Court certify that any appeal by Petitioner in this action would be without merit and therefore not taken in good faith and, accordingly, find that Petitioner is not entitled to appeal *in forma pauperis*.

## VI.    Conclusion

For the reasons set forth herein above, it is **RECOMMENDED** that Gordon's § 2255 motion (Doc. 47) is due to be **DENIED** and **DISMISSED with prejudice**. The undersigned further **RECOMMENDS** that Petitioner be found not entitled either to a Certificate of Appealability or to proceed *in forma pauperis* on appeal.

### NOTICE OF RIGHT TO FILE OBJECTIONS

A copy of this report and recommendation shall be served on all parties in the manner provided by law. Any party who objects to this recommendation or anything in it must, within fourteen (14) days of the date of service of this document, file specific written objections with the Clerk of this Court. *See* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72(b); S.D. ALA. L.R. 72.4. In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the Magistrate Judge's report and recommendation where the disputed determination is found. An

objection that merely incorporates by reference or refers to the briefing before the Magistrate Judge is not specific.

**DONE** this the 17th day of September **2018**.

_/s/Katherine P. Nelson_
**KATHERINE P. NELSON**
**UNITED STATES MAGISTRATE JUDGE**